```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
```
**NORTHER DIVISION at COVINGTON**

MONICA WALTERS              )
                            )
    Plaintiff,              )
                            ) Civil Action No. 2:10cv136-JMH
                            )
v.                          )
                            )
MICHAEL J. ASTRUE, COMMISSIONER ) **MEMORANDUM OPINION AND ORDER**
OF SOCIAL SECURITY,         )
                            )
    Defendant.              )
                            )
                            )

                **      **      **      **      **

This matter is before the Court on cross motions for summary judgment [Record Nos. 13 and 16][1] on Plaintiff's appeal of the Commissioner's denial of her application for disability and disability insurance benefits. The Court, having reviewed the record and being otherwise sufficiently advised, will deny Plaintiff's motion and grant Defendant's motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff applied for a period of disability and disability insurance benefits on February 14, 2007, alleging disability beginning October 25, 2006. The claim was denied initially on April 27, 2007, and on reconsideration on September 27, 2007. A hearing was held on June 3, 2008 by Administrative Law Judge

---

[1] These are not traditional Rule 56 cross motions for summary judgment. Rather, they are procedural devices used by the Court to obtain the views of the parties regarding the sufficiency of the evidence contained in the administrative record developed before the Commissioner.

("ALJ") Don C. Paris, who issued a decision denying Plaintiff's claim on September 30, 2008. On May 8, 2010, the Appeals Counsel denied Plaintiff's Request for Review, which made the ALJ's decision the final decision of the Commissioner. Plaintiff exhausted her administrative remedies and timely filed this action seeking judicial review pursuant to 42 U.S.C. § 405 (g).

Plaintiff was thirty-six years old at the time of the ALJ's decision. She has a Bachelor's degree in nursing, and has past relevant work experience as an assembler, cook, cashier, food preparer, nurse's aid, licensed practical nurse, and registered nurse. She alleges that she became disabled after a fall. After considering the record, the ALJ found that Plaintiff suffered severe impairments from degenerative disc disease of the lumbar and thoracic spine with facet arthropathy, and contusion of the coccyx. Plaintiff also suffered from the non-severe medically determinable impairment of mild degenerative disc disease of cervical spine. These impairments did not meet or medically equal on of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ determined Plaintiff's residual functional capacity ("RFC"). See 20 C.F.R. §§ 404.1520(a)(4), (e)-(f). The ALJ found that Plaintiff could perform a reduced range of light work with occasional lifting/carrying 20 pounds, and frequently carrying 10 pounds; standing and walking 6 hours in an 8 hour day; no more than frequently climbing stairs/ramps, and never climbing ladders, ropes

or scaffolds; no more than frequent stooping, kneeling, crouching, or crawling; and she should avoid concentrated exposure to full body vibration. The ALJ then found, based on a vocational expert's testimony, that Plaintiff's RFC allowed her to perform her past relevant work as cashier and food preparer, because those jobs would not require her to perform work-related duties that would be precluded by her RFC. Thus, the ALJ found Plaintiff was not disabled.

In this appeal, Plaintiff argues that the decision is not based on substantial evidence because the ALJ selectively relied on the opinion of Mitchell Simmons, M.D., and therefore misrepresented the evidence when viewed in its entirety, that the defendant erred by failing to accept the opinion of John Kelly, M.D., submitted after the hearing, and that the ALJ erred by applying the "sit and squirm" test. The Commissioner contends that the ALJ's determination was supported by substantial evidence in all relevant respects.

## II. OVERVIEW OF THE ALJ HEARING

In determining whether a claimant is disabled, the ALJ conducts a five-step analysis:

> 1.) Is the individual engaging in substantial gainful activity? If the individual is engaging in substantial gainful activity, the individual is not disabled, regardless of the claimant's medical condition.
>
> 2.) Does the individual have a severe impairment? If not, the individual is not disabled. If so, proceed to step 3.

3

>   3.) Does the individual's impairment(s) meet or equal the severity of an impairment listed in appendix 1, subpart P of part 404 of the Social Security Regulations?  If so, the individual is disabled.  If not, proceed to step 4.
>
>   4.) Does the individual's impairment(s) prevent him or her from doing his or her past relevant work, considering his or her residual functioning capacity?  If not, the individual is not disabled, if so, proceed to step 5.
>
>   5.) Does the individual's impairment(s) prevent him or her from performing other work that exists in the national economy, considering his or her residual functioning capacity together with the "vocational factors" of age, education, and work experience?  If so, the individual is disabled.  If not, the individual is not disabled.

*Heston v. Comm'r of Social Security*, 245 F.3d 528, 530 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### III. STANDARD OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the Court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, *see* 42 U.S.C. § 405(g), *Foster v. Halter*, 279

4

F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching his conclusion. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

### IV. ANALYSIS

First, Plaintiff contends the ALJ accorded improper weight to the opinion of treating physician Dr. Mitchell Simons. Plaintiff argues that the ALJ selectively picked several notes from Dr. Simons medical records which indicated that Plaintiff's condition had improved. By failing to rely on the remaining notes, Plaintiff argues, the ALJ neglected to appreciate that Plaintiff's condition fluctuates, and erroneously concluded that she had improved.

Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding her impairments. See 42 U.S.C. § 423(d)(5); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984). Plaintiff must provide the relevant medical and other evidence she believes will prove her alleged disability as a result of physical or mental impairments. See 20 C.F.R. §§ 404.1512(a), (c).

The Commissioner is charged with the duty to weigh the

evidence and determine the case accordingly. See *Bradley*, 862 F. 2d at 1227. This includes considering any medical opinions together with the rest of the relevant evidence to determine whether the opinions are internally consistent, consistent with the record as a whole, and supported by clinical findings. See 20 C.F.R. §§ 404.1527(b), (c), (d)(3)-(4).

The record in this case demonstrates that the existence and severity of Plaintiff's symptoms varied over her course of treatment with Dr. Simons, at times getting better and worse based on treatment and other factors. However, this does not invalidate the ALJ's findings. A treating source opinion should be given controlling weight only when it is well-supported by clinical and laboratory findings, and is consistent with other evidence of record. *See Crouch v. Sec'y of Health and Human Servs.*, 909 F.2d 852, 856 (6th Cir. 1990); *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984); 20 C.F.R. §§ 404.1527(b), (d)(2)-(4); *see also* 42 U.S.C. § 423(d)(3). The ALJ noted that the severe limitations imposed by Dr. Simons were inconsistent with the objective medical tests, as well as with his own observations and the Plaintiff's statements to him during treatment.

As the ALJ noted, diagnostic testing only demonstrated mild lumbar spondylosis with mild disc bulging at L4-L5 and L5-S1, and there has never been a recommendation for surgical intervention.

6

On May 30, 2008, Dr. Simons completed a medical source statement and opined Plaintiff could not perform full-time sedentary work because, although she could lift up to 10 pounds, she could only sit and stand/walk for a total of 7 hours per day. The ALJ discussed Dr. Simons' opinion, but accorded it little weight because it was not supported by the record. Judicial review of the Commissioner's findings must be based upon the record as a whole and the Commissioner's decision isn't required to cite every piece of evidence of record. *See Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

Dr. Simons' limitations are consistent with a finding of disability, but are internally inconsistent with his own records and the objective diagnostic tests.  On October 25, 2006, Plaintiff's alleged onset of disability, the ALJ noted that x-rays of Plaintiff's right wrist and tail bone were negative with normal alignment and no fracture of the sacrum or coccyx.  The ALJ pointed out that a November 7, 2006, lumbar spine MRI showed only minimal disc bulging at L1-L5 with only mild disc and facet arthritis without significant mass effect or nerve root compression, and a December 4, 2006, thoracic spine MRI showed no disc protrusion at T7-8 and only a minimal disc bulge at T12- L1. Dr. Simons ordered nerve studies of the lower extremities, lumbar and thoracic spine epidurals, and a bone scan. The January/February 2007 records showed a nerve conduction study was borderline abnormal with no

7

evidence of nerve entrapment or pathology. A January 2007 lumbar spine MRI showed only minor degenerative changes at L4-5 and L5-S1 with no focal disc protrusion or canal stenosis. Then, on February 7, 2007, Dr. Simons saw no motor weakness or reflex changes. Plaintiff continued to show improvement and on February 28, 2007, Dr. Simons saw no muscle banding or edema and noted Plaintiff walked with a steady gait. Plaintiff said her lower back was doing a lot better on March 21, 2007. During this time, Dr. Simons performed spinal epidurals on January 29, February 19, March 12, and April 2, 2007. On April 11, 2007, Dr. Simons noted significant improvement in Plaintiff's back pain with the epidural treatment. On April 25, 2007, Plaintiff alleged increased back pain and posturing problems; Dr. Simons noted a lot of muscle spasms, but saw no edema and said Plaintiff walked with a steady gait. The ALJ pointed out that a May 14, 2007, cervical spine MRI showed shallow disc displacement/bulges without evidence of central canal stenosis or cord compression. Then, on August 29, 2007, Plaintiff was very happy because her pain was reduced with the cervical and lumbar diagnostic blocks. At that time, her pain medication was reduced, she reported her functional level had improved and, although she had muscle tightness in her back and shoulder area, there were no new neurological changes in her lower extremities.

On October 3, 2007, Plaintiff complained of thoracic and low back pain. Dr. Simons noted good results from the diagnostic

8

blocks, but said Plaintiff still had a minimal activity level and he planned on performing denervations.   Later, on October 31, 2007, after the denervations, Plaintiff said her back pain was doing so well that it changed her life and she was able to do numerous things she was unable to do before.  Dr. Simons planned therapy to recondition Plaintiff and get her back to work, and he noted some back tenderness with slight muscle banding, but saw no edema and noted Plaintiff walked with a steady gait.

   On November 28, 2007, Plaintiff said her pain levels were up from her previous visit. On exam, Plaintiff was tender at the facet joints of the lower cervical and upper thoracic spine with some muscle banding and stiffness, but she walked with a steady gait with had no edema. Dr. Simons planned on doing two more thoracic epidurals, and Plaintiff was still doing well in her low back from the denervation.  On January 2, 2008, Dr. Simons said Plaintiff had significant pain in the thoracic area with significant banding and tightness, and her functional level was diminished. The ALJ noted Dr. Simons's comment that Plaintiff's ability to work was fair.

   Later that month, Dr. Simons found muscle banding and tightness in the thoracic and low back areas.  Although Dr. Simons said Plaintiff was not ready for a work-hardening program, he advised her to walk as much as possible and said she was in an exercise program. On February 5, 2008, Plaintiff's right low back pain which was affecting the thoracic area. Plaintiff's straight

9

leg raising was slightly positive, Dr. Simons saw no weakness, and he still planned to perform more epidurals because of the good results Plaintiff had previously received. She was then unable to tolerate an exercise program.

As ALJ notes, on May 2, 2008, the visit immediately prior to Dr. Simons' May 30, 2008, opinion, Plaintiff was doing better. Her pain levels had decreased after a neck epidural; there was only minimal tenderness of the cervical facet joints, more so in the back, there was some stiffness on range of motion, and Plaintiff's arm strength was strong. August 30, 2008, lumbar spine MRI (performed 3 months after Dr. Simons' opinion) showed small disc herniations at L4-5 and L5-S1 impinging on the thecal sac, and a cervical spine MRI that day showed bulging discs at C4-5 and C5-6 without evidence of disc herniation, spinal stenosis, or cord compression.

The ALJ also found that the opinion of state agency physician Dr. Mary Payne supported his decision that Plaintiff is not disabled. See SSR 96-6p, 1996 WL 374180 (S.S.A.) *1 (1996); 20 C.F.R. § 404.1527(f)(2). On September 10, 2007, Dr. Payne opined Plaintiff could perform a significant range of medium work. Dr. Payne relied on the records showing that the plaintiff's x-rays and the bone scan showed no fracture, the MRIs showed only mild degenerative disc/joint disease without cord impingement, and the EMG and nerve conduction studies were normal. Dr. Payne's opinion

provides substantial evidence for the ALJ's RFC finding that Plaintiff can perform a reduced range of light work.

Thus, the ALJ provided a reasoned rationale for not affording controlling weight to the limitations contained in Dr. Simons' opinion, and the limitations in the ALJ's RFC, and his opinion as a whole was supported by substantial evidence. "If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Cornett v. Sec'y of Health and Human Servs.*, 869 F.2d 260, 263 (6th Cir. 1988).

Additionally, Plaintiff argues that the ALJ impermissibly applied the "sit and squirm" test because the ALJ noted that Plaintiff presented at the hearing with a normal gait and sat through the hearing without changing positions. While it is impermissible for an ALJ to discount a claimant's complaints of pain "solely on the basis of [the ALJ's] own observation" at a hearing, it is permissible for the ALJ to make observations about behavior and credibility. *Weaver v. Sec'y of Health and Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983). Where, as here, the ALJ's decision was not based solely on observations of Plaintiff's demeanor at the hearing, but instead on the record as a whole, those observations are permissible. *Id.* The ALJ also relied on Plaintiff's testimony regarding her activities, as well as the physician's notes regarding her abilities and reports of pain.

Finally, Plaintiff argues that the Commissioner erred by not

11

accepting the opinion of Dr. John Kelly, which was submitted after the hearing. Evidence which was not available to the ALJ may only be considered as a possible basis for remand under sentence six of 42 U.S.C. § 405(g). *See Cline v. Commissioner of Social Security*, 96 F.3d 146, 148-149 (6th Cir. 1996). A remand is possible only if Plaintiff demonstrates that good cause exists for her failure to introduce the evidence, and that the medical evidence is new and material. *See Willis v. Sec'y of Health and Human Servs.*, 727 F.2d 551, 553-554 (6th Cir. 1984). Plaintiff has not demonstrated either factor. *See Sizemore v. Sec'y of Health and Human Services*, 865 F.2d 709, 711 (6th Cir. 1988); *Oliver v. Sec'y of Health and Human Services*, 804 F.2d 964, 966 (6th Cir. 1986). Accordingly, this Court declines to remand this matter for further consideration of Dr. Kelly's opinion.

## V. CONCLUSION

Accordingly, and for the foregoing reasons, **IT IS ORDERED:**

(1) That Defendant's motion for summary judgment [Record No. 16] be, and the same hereby is, **GRANTED**; and

(2) That Plaintiff's motion for summary judgment [Record No. 13] be, and the same hereby is, **DENIED.**

This the 30th day of September, 2011.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge